Wanamaker, J.
The briefs on both sides of this case are commendably concise and clear. They agree upon the essential questions of fact as well as of law. The admitted controlling facts are as follows:
1. That The Osborn Bank was organized in 1889, when the double liability of stockholders of *52 all Ohio private corporations was in effect under the Constitution of 1851.
.2. That on November 3, 1903, the double liability of stockholders of all private corporations, as fixed by the Constitution of 1851, was amended by the provision, “but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her.”
3. That on September 3, 1912, the amendment of November 3, 1903, above quoted, was amended by the addition of the following words, “except that stockholders of corporations authorised to receive money on deposit shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporations, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares.”
Out of these controlling admissions there arises the following primary and decisive question: Does the amendment which went into effect January 1, 1913, prior to the indebtedness involved in this case, apply by its own force and effect to the stockholders of The Osborn Bank, as found and held by the courts below ?
An examination of Section 3, Article XIII, of the Constitution of 1851, clearly shows that the double liability could be attached to the stock of all private corporations of zvhatsoever character.
It is likewise clear that under the amendment of November 3, 1903, only the single liability attached to the stock of all private corporations.
*53 Under the amendment of September 3, 1912, this single liability as to private corporations was retained except as to corporations “authorized to receive money on deposit.”
It is admitted that The Osborn Bank was such a corporation.
A reading of the language of this amendment as applied to all “private corporations” discloses the fact that the words “as may be prescribed by law” are general and all-comprehensive as to “private corporations.”
But when the constitution excepted from this limited liability corporations “authorized to receive money on deposit” it is quite apparent that the constitution, in this particular exception of corporations, decided to enter the domain of legislation and fix the liability of the stockholders of such a corporation.
Modern-day constitutions differ much from the constitutions of earlier periods, especially in respect to the delegation of powers to the state general assemblies. As a rule, they are much more specific and particular in the delegation of power, in order to safeguard the public interest; further, they very frequently legislate directly and expressly for the people, rather than place their trust solely in the general assemblies.
Here, in the amendment of 1912, the constitution makers exercise such power, and in the clearest and most convincing language forever fix that liability free from interference of the general assembly, during the life of such controlling amendment.
*54 As to all other private corporations the legislature may prescribe, but not as to “corporations authorized to receive money on deposit.”
This primary purpose of the constitution makers and adopters is not only clear from the language adopted in the amendment, but likewise from the language absent in the amendment. It must be observed and remembered that while the words “as may be prescribed by law” apply generally to all private corporations, and, therefore, but for the presence of the exception, would apply to “corporations authorized to receive money on deposit,” it is especially significant that in the language setting forth the exception, as to which the general assembly may not otherwise provide, no similar language is used and neither is the legislature empowered to create any other exceptions. It seems to have been the primary and paramount purpose of the constitution to withdraw this exception from all consideration, amendment or modification of the general assembly of Ohio.
This declaration in the constitution is in keeping with the spirit of the times. Public policy is clearly indicated through the public press, and public opinion is earnestly endeavoring to encourage a spirit of thrift and savings among our people, and, in order that there shall be the most complete practical safeguarding of such savings, these special corporations and their stockholders are charged by law with this additional liability as a guaranty that the deposits will be paid dollar for dollar.
The constitutional amendment of September 3, 1912, is, after all, only a declaration of this whole *55 some policy. What the people have fully done directly through their constitution needs no aid from legislative enactment. It is clearly self-executing. If, however, such aid were required, it was abundantly provided in the general scope of the statutes found in 103 Ohio Laws, 530, as passed April 14, 1913,
Cases have been cited from other states wherein constitutional provisions have been held not self-executing, especially from Illinois, Massachusetts, New York and Kansas. It is unnecessary here to consider the varying language appearing in these various cases under consideration. The question in each case must necessarily be “How is it nominated in the bond?” ■ How is it written in the specific provision of the constitution controlling and defining the liability? We have no doubt whatsoever of the self-executing character of the Ohio provision.
The right of the superintendent of banks to bring this action for and on behalf of the creditors of the bank, in his capacity as trustee, cannot now be questioned. So long as the stockholders of The Osborn Bank continued to own that stock, so long were they subject to the liabilities imposed by the constitution and laws of the state, touching the indebtedness they incurred under any such constitutional provision and the statutes pertaining thereto.
Judgment of the court of appeals is affirmed.

Judgment affirmed.

Nichols, C. J., Jones, Matthias, Johnson, Donahue and Robinson, JJ., concur.